IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STESHEA RAGLIN, individually and as next friend of Z.R., a minor, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) No. 15 C 4476<br>)<br>) Judge Jorge L. Alonso<br>) |
| BOARD OF EDUCATION OF BLOOM TOWNSHIP HIGH SCHOOL DISTRICT #206, DR. LENEL NAVARRE, in his official capacity as Superintendent of Bloom Township High School District #206, DAWN ANGELLINI, in her official capacity as Director of Student Services of Bloom Township High School District #206, and ROSE WALLS, in her official capacity as Special Education Coordinator of Bloom Township High School District #206, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff sues the Board of Education of Bloom Township High School District #206[1] for its violations of the Individuals with Disabilities Education Act ("IDEA") and the Fourteenth Amendment. Defendant has filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).[2] For the reasons set forth below, the Court grants in part and denies in part the motion.

---

[1]Plaintiff's claims against the individual defendants in their official capacities are really claims against the District. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985).

[2]The District also contends that the Court lacks jurisdiction over Counts II and III because plaintiff has not exhausted administrative remedies. However, "failure to exhaust administrative remedies [under the IDEA] does not deprive a court of jurisdiction." *Charlie F. by Neil F. v. Bd. of Educ. of Skokie Sch. Dist. 68*, 98 F.3d 989, 991 (7th Cir. 1996). Thus, the

## Facts

Plaintiff is the mother of Z.R., a student in Bloom Township High School District #206 who is eligible to receive special education services under the IDEA. (1st Am. Compl. ¶ 1.) On July 31, 2013, plaintiff attempted to enroll Z.R. in the District by providing it with all required documents and a copy of Z.R.'s April 23, 2013 individual education plan ("IEP"). (*Id.* ¶ 14.) Rose Walls, the District's Special Education Coordinator, made a copy of the IEP and did not tell plaintiff that there was anything else she needed to do to enroll Z.R. (*Id.* ¶ 15.)

On August 1, 2013, Walls told plaintiff that she had to enroll Z.R. twice more; first, at the District Office, and then in a special needs program called "SPEED." (*Id.* ¶ 16.)

On August 22, 2013, a week after the school year started, Walls scheduled a tour of the SPEED program for plaintiff on September 6, 2013. (*Id.* ¶ 18.) After the tour, plaintiff told Walls she did not think the program was sufficient to meet Z.R.'s needs. (*Id.*)

On September 9, 2013, the District conducted a placement IEP meeting for Z.R., but did not provide the statutorily-required notice of the meeting and did not have all of the required participants in attendance. (*Id.* ¶ 19.) At the end of the meeting, Walls told plaintiff that the District would contact her about Z.R.'s enrollment and placement. (*Id.*)

On October 7, 2013, plaintiff told District Superintendent Navarre that Z.R. had an April 13, 2013 IEP placing him at Elim Christian Therapeutic Day School, she had met with District representatives regarding the IEP and Z.R.'s placement, but Z.R. was still not in school and she had had no recent contact from the District. (*Id.* ¶ 20.) Superintendent Navarre told plaintiff that Dawn Angellini, the District's Director of Student Services, would be in touch with her. (*Id.*)

Court analyzes the motion under Rule 12(b)(6).

On December 5, 2013, the District set an IEP meeting for December 16, 2013. (*Id.* ¶ 21.) On the day of the meeting, Angellini told plaintiff that she needed to enroll Z.R. at Bloom Trail High School before the IEP meeting could be conducted. (*Id.* ¶ 22.) On December 17, 2013, plaintiff registered Z.R. again, but the District still refused to implement his IEP. (*Id.*)

Another IEP meeting, with counsel for both sides present, was scheduled for January 23, 2014. (*Id.* ¶ 23.) "[H]owever, due to inclement weather, [plaintiff's] attorney was unable to be present." (*Id.*) "The meeting was not re-scheduled by the District until April 1, 2014 despite numerous attempts by [plaintiff] to have an IEP Meeting sooner." (*Id.*)

On March 31, 2014, plaintiff filed a due process complaint notice, alleging that the District:

> i. Fail[ed] to implement [Z.R.'s] transfer IEP from his previous District . . . ;
> ii. Fail[ed] to adopt the IEP of the former school after being told [that plaintiff was] satisf[ied] with [it;]
> iii. Fail[ed] to conduct an IEP team meeting to adopt [Z.R.'s] current IEP[;]
> iv. Fail[ed] to provide [Z.R.] with any specialized educational services after [he] enrolled;
> v. Fail[ed] to provide [Z.R.] with an appropriate IEP that includes:
> > 1. Appropriate goals and objectives addressing each of [Z.R.'s] identified disabilities;
> > 2. An identified placement for [Z.R.];
> > 3. A personal aide for [Z.R.];
> > 4. An appropriate research[] based methodology of instruction in reading for [Z.R.];
> > 5. Parental participation;
> > 6. Identification of [Z.R.] as a Student with autism;
> > 7. . . . [E]valuat[ion] [of Z.R.] in all areas of the disabilities;
> > 8. . . . all required participants . . . .
> vi. Predetermin[ed] [Z.R.'s] placement;
> vii. Fail[ed] to evaluate [Z.R.] in all areas of his disability;
> viii. Fail[ed] to provide [Z.R.] with an appropriate ESY [educational school year] placement during the summer of 2014[; and]
> ix. . . . [E]valuat[ed] [Z.R.] . . . [in]appropriate[ly] . . . [.]

(*Id.*, Ex. 1, Due Process Hr'g Decision, Issues.)

On July 30 and September 4 and 5, 2014, an independent hearing officer held a due process hearing on plaintiff's complaint. (*Id.*, Cover Page.) On September 18, 2014, the hearing officer issued a decision, finding for plaintiff on the first five issues in her complaint, *i.e.*, that the District failed to implement Z.R.'s transfer IEP when he enrolled, failed to adopt Z.R.'s previous IEP when plaintiff said she was satisfied with it, failed to conduct an IEP team meeting to adopt Z.R.'s IEP, failed to give Z.R. specialized educational services after he enrolled, and failed to give him an appropriate IEP. (*Id.*, Conclusions of Law ¶¶ 27-28.) The hearing officer found for the District on the remaining issues, *i.e.*, that the District had predetermined Z.R.'s placement, failed to evaluate him in all areas of his disability, failed to provide him with an appropriate ESY placement during the summer of 2014, and that its psychological evaluation of Z.R. was inappropriate. (*Id.* ¶ 29.)

On September 23, 2014, both parties requested clarification of the decision, which the hearing officer issued on September 24, 2014. (*See* 1st Am. Compl., Ex. B, Resp. District & Parent's Req. Clarification.) Neither party appealed. (1st Am. Compl. ¶ 13.)

## Discussion

On a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiff's favor. *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations" but must contain "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

4

the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570).

In Count I, plaintiff seeks attorney's fees as a prevailing party under the IDEA, a claim the District contends is untimely.[3] *See* 20 U.S.C. § 1415(i)(3)(B) (stating that "the court, in its discretion, may award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability" in an action brought under the IDEA). The parties agree that such a claim must be brought within 120 days of the hearing officer's final decision. (*See* District's Br. Supp. Mot. Dismiss at 9; Pl.'s Mem. Law Opp'n Mot. Dismiss at 3); *see also McCartney C. ex rel. Sara S. v. Herrin Cmty. Unit Sch. Dist. No. 4*, 21 F.3d 173, 175 (7th Cir. 1994) (assuming, based on parties' agreement, that 120 days is the statute of limitations for IDEA attorney's fees claim and holding that the limitations period begins to run from the date of the hearing officer's final decision). The hearing officer rendered his decision on September 18, 2014, and the 120-day period for appealing that decision began to run the next day. *See* 105 Ill. Comp. Stat. 5/14-8.02a(i) (setting 120-day period to appeal from the decision in a due process hearing); 5 Ill. Comp. Stat. 70/1.11 ("The time within which any act provided by law is to be done shall be computed by excluding the first day and including the last . . . ."). The appeal period ran for four days, from September 19 until September 22, was tolled on September 23 and 24 while the parties' requests to the hearing officer for clarification were pending, and began running again on September 25, the day after the hearing officer issued the requested clarification. *See* 105 Ill. Comp. Stat. 5/14-802a(h) ("The statute of limitations for seeking review of the [hearing officer's] decision shall be

---

[3]Untimeliness can be the basis for a Rule 12(b)(6) dismissal, if "a complaint plainly reveals that an action is untimely under the governing statute of limitations." *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005).

tolled from the date the request [for clarification] is submitted until the date the hearing officer acts upon the request."). The remaining days of the appeal period elapsed, and the hearing officer's decision became final, on January 20, 2015.[4] Thus, the limitations period for filing the attorney's fees claim started the next day, January 21, 2015, and ended 120 days later on May 21, 2015 – the day plaintiff filed this suit. The Court therefore denies the District's motion to dismiss the attorney's fees claim as untimely.

In Counts II and III, respectively, plaintiff alleges that the District discriminated against Z.R. in violation of the Rehabilitation Act and violated his equal protection rights. The District argues that plaintiff was required to exhaust the IDEA's administrative remedies for these claims, though they are not brought under that statute, because they seek relief that is available under the IDEA. *See* 20 U.S.C. § 1415(l) ("Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 . . . , title V of the Rehabilitation Act of 1973 . . . , or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter."); *Charlie F. ex rel. Neil F. v. Bd. of Educ. of Skokie Sch. Dist. 68*, 98 F.3d 989, 991-93 (7th Cir. 1996) (applying IDEA exhaustion requirement to Rehabilitation Act and § 1983 claims).

---

[4]The period actually elapsed on January 18, 2015. Because, however, that was a Sunday, and the following day was a holiday, those two days are eliminated from the calculation. *See* 5 Ill. Comp. Stat. 70/1.11 ("The time within which any act provided by law is to be done shall . . . includ[e] the last [day], unless the last day is Saturday or Sunday or is a holiday . . . and then it shall . . . be excluded. If the day succeeding such Saturday, Sunday or holiday is also a holiday or a Saturday or Sunday then such succeeding day shall also be excluded.").

6

Plaintiff counters that compensatory damages, which is the relief she seeks in these claims (1st Am. Compl., Prayer for Relief), are not available under the IDEA and therefore exhaustion is not required.

However, as the Seventh Circuit explained in *Charlie F*, relief may be "available" under the IDEA, even if plaintiff seeks compensatory damages:

> . . . . Why do Charlie's parents want money? Presumably at least in part to pay for services (such as counseling) that will assist his recovery of self-esteem and promote his progress in school. Damages could be measured by the cost of these services. Yet the school district may be able (indeed, may be obliged) to provide these services in kind under the IDEA. If it turns out that the school is not obliged to provide such services, that may be because Charlie's parents have exaggerated what happened in fourth grade, the consequences of those events, or both. In other words, the educational professionals and hearing officers who evaluate claims under the IDEA may conclude (a) that adequate remedial services can be provided, or (b) that Charlie does not today require services. The first outcome would show that relief is available under the IDEA; the second would provide information relevant to Charlie's claims under statutes other than the IDEA. In either event, pursuit of the administrative process would be justified. Charlie would not get the kind of relief the complaint demands, but this is not what § 1415(f) says. We read "relief available" to mean relief for the events, condition, or consequences of which the person complains, not necessarily relief of the kind the person prefers.

98 F.3d at 992. Whether relief is available, the court said, depends on "[t]he nature of the claim and the governing law," not on what "the aggrieved party wants." *Id.* at 991-92; *see McCormick v. Waukegan Sch. Dist. No. 60*, 374 F.3d 564, 568 (7th Cir. 2004) ("Where a plaintiff has alleged injuries that could be redressed to some degree by the IDEA's administrative procedures and remedies, then the courts should require exhaustion of administrative remedies.") (quotation omitted).

Plaintiff seeks damages for the District's "denying [Z.R.] the benefits of his education," "failing to allow [him] to enroll and begin receiving services, and [failing to] implement any services at all between the first date of school of the 2013-2014 School Year until the implementation of the

7

IEP after the Due Process Hearing." (1st Am. Compl. ¶¶ 29, 31.) In other words, plaintiff seeks damages to compensate for the year of education that Z.R. missed. Compensatory educational services is relief available under the IDEA. *See Evanston Cmty. Consol. Sch. Dist. No. 65 v. Michael M.*, 356 F.3d 798, 803 (7th Cir. 2004) (per curiam) ("Compensatory services are well-established as a remedy under the IDEA."). Thus, regardless of how plaintiff characterizes it, at least some of the relief she seeks in Counts II and III is available under the IDEA.

The next question is whether plaintiff exhausted administrative remedies with respect to this relief. Plaintiff made a claim for compensatory education services in her due process complaint. (*See* District's Br. Supp. Mot. Dismiss 1st Am. Compl., Ex. A, Due Process Compl. at 2.) However, the hearing officer struck that claim because plaintiff had not complied with his orders to "provide specific information" about and disclose documents and witnesses relative to it. (*See* District's Br. Supp. Mot. Dismiss 1st Am. Compl., Ex. D, Ruling Mot. Barring Compensatory Education Relief.)[5] Because the hearing officer did not address this claim on the merits, plaintiff did not exhaust administrative remedies with respect to it. *See Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) ("[E]xhaustion means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)") (emphasis in original); (1st Am.

---

[5]The Court may take judicial notice of the hearing officer's decision. *See Opoka v. I.N.S.*, 94 F.3d 392, 394 (7th Cir. 1996) ("[I]t is a well-settled principle that the decision of another court or agency . . . is a proper subject of judicial notice."); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (stating that a "district court may . . . take judicial notice of matters of public record without converting a 12(b)(6) motion into a motion for summary judgment") (quotation omitted).

Compl., Ex. 1, Due Process Hr'g Decision at 28 (noting that plaintiff's "request for compensatory education . . . was stricken" and saying that, "[h]ad [she] complied with the directives and responded to the [hearing officer's] inquiry, the [hearing officer] would have awarded compensatory education").

## Conclusion

For the reasons set forth above, the Court grants in part and denies in part the District's motion to dismiss [15] and dismisses Counts II and III without prejudice for failure to exhaust administrative remedies. The motion is denied as to Count I. This case is set for a status hearing on March 9, 2016 at 9:30 a.m.

**SO ORDERED.**                                **ENTERED: February 29, 2016**

  _____
  **HON. JORGE L. ALONSO**
  **United States District Judge**